# EXHIBIT J

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | NO. 10-cv-10951-RWZ |
| vs. ) | |
| ) | |
| INTERLACE MEDICAL, INC., and ) | |
| HOLOGIC, INC. ) | |
| ) | |
| Defendants. ) | |

**EXPERT REPORT OF DR. HENRY A. DOMINICIS, M.D.**

1. I am Dr. Henry A. Dominicis, M.D., and I have been retained as an expert on behalf of Interlace Medical, Inc. and Hologic, Inc. (together, "Interlace") to provide opinions regarding the use and performance of Interlace's and Smith & Nephew's ("S&N's") morcellator products.

2. I am a practicing gynecologist at WomanCare PC in Arlington Heights, Illinois, a suburb of Chicago. I have been a practicing gynecological surgeon for over 20 years and have experience in various procedures for, among other things, the treatment of abnormal uterine bleeding and the removal of intrauterine pathology.

3. I attended the University of Illinois College of Medicine in Chicago and completed my residency at Lutheran General Hospital in 1991. I am Board Certified in Obstetrics and Gynecology. I have been in my current practice since graduation and have taken a special interest in non-invasive surgical techniques. I have also developed numerous community health clinics to serve the uninsured community.

4. I have personally used both the S&N morcellator product and the Interlace morcellator product.

5. My full background and credentials are set forth in my CV, attached hereto at Appendix A.

6. I have not previously provided expert opinions in a patent infringement litigation, but I have testified as an expert in various medical malpractice matters.

7. I am being compensated for my time at the rate of $400 per hour.

8. I submit this report in accordance with Federal Rule of Civil Procedure 26(a)(2)(B). This report sets forth the substance of the facts and opinions on which I currently expect to testify and a summary of the bases and reasons for my opinions.

9. I am prepared to testify at trial regarding procedures and devices for the removal of intrauterine pathology, including fibroids and polyps. Such procedures include hysterectomy, electrical resection, endometrial ablation, D&C, morcellation, and other means of pathology removal (e.g. graspers and forceps). I am prepared to testify about the steps undertaken by doctors and their support staff during such procedures and how devices are used in such procedures. I am also prepared to testify about the S&N and Interlace morcellator systems and how to perform procedures using those systems. With respect to the procedures mentioned above, I am also prepared to testify about how to use a hysteroscope, how to distend a uterus with fluid and maintain that distention, how to dilate the cervix, how fluid is managed, how to maintain visualization, and the risks posed to the patient from each such procedure, including the risks of intravasation and perforation.

10. I am prepared to demonstrate the operation of Interlace's and S&N's morcellation products, as well as hysterscopes and other devices used electrical resection, endometrial ablation, D&C, morcellation, other means of pathology removal (e.g. graspers and forceps), and hysterectomy.

11. The S&N and Interlace morcellator products are designed to remove polyps and fibroids from the uteri of women suffering from abnormal uterine bleeding. I have performed well over 600 hysterectomies in my career. I have performed more than 250 procedures in which I removed intrauterine polyps and fibroids in a patient. I have performed at least four such procedures using the S&N morcellator product. The S&N morcellator was too slow in terms of

the rate of tissue removal and was limited in the types of tissues that it could effectively remove. For at least those reasons, I found that the S&N morcellator did not provide a sufficient advantage over the gold standard of electrical loop resection to justify using it in my practice. This understanding is based not only on my own personal experiences with the S&N morcellator, but also on communications I have had with my colleagues in the field who reached the same conclusion.

12. Because of the inadequacies of the S&N morcellator, I do not believe that the S&N morcellator adequately addressed any need in the medical community for a device that removed intrauterine pathology more efficiently and more safely than electrical loop resection.

13. I am aware that, this year, S&N modified its control unit such that the speed of its cutter has been increased. I have heard about the performance of the modified S&N morcellator from other doctors in my field and I understand that it does not yield a substantial improvement over the performance of the unmodified S&N morcellator.

14. I have performed over 70 procedures using the Interlace morcellator product and find that product to be far superior to S&N's morcellator product and to other means of removing intrauterine pathology, including electrical resection. In my experience, and based as well on what I have discussed with other doctors in my field, the Interlace morcellator (1) removes tissue faster than the S&N morcellator and (2) is capable of removing a greater variety of tissue types than the S&N morcellator.

15. Polyps and fibroids are very different kinds of tissue. Polyps are formed of soft endometrium. Because of their softness and the nature of their connection to the body, polyps are, in the vast majority of cases, much more easily removed from a patient than are fibroids. Many polyps can be removed by using a grasper, forceps or similar device to "pluck" them from

the wall of the patient's uterus. Polyps can generally be removed in an office-based setting, rather than in a hospital operating room ("OR").

16.     In contrast to the soft, endometrial polyps, fibroids (or myomas) are fibrous tissues that are often calcified. Fibroids commonly have the hardness of tough grizzle on a steak. When a fibroid is calcified, which is common, it can be even harder. Although rare, fibroids can sometimes be so hardened from calcification that they cannot be removed using any mechanical device, and electrical resection, hysterectomy, or other methods must be used for treatment. Because of the hardness of fibroid tissue and the nature of its connection to the patient's body, removal of fibroids is a more advanced procedure than removal of polyps. Fibroids are generally removed in the hospital OR rather than the office. Fibroids cannot be removed with graspers, but must be cut away using a mechanical cutter, electrical resection, or in some instances hysterectomy.

17.     At least because of these differences between fibroids and polyps, the reimbursement rates for the removal of fibroids and the removal of polyps are different; they are much lower for the removal of polyps.

18.     I have removed intrauterine fibroids using a number of methods in addition to morcellation. Electrical resection has been and continues to be the medical gold standard for removal of intrauterine fibroids in the medical community (though I personally use the Interlace morcellator product for the vast majority of my fibroid removal procedures and I believe it is superior to electrical loop resection). Electrical resection involves the use of a heated wire that cuts the fibroid away from the uterus using cautery. I have also treated abnormal uterine bleeding caused by intrauterine fibroids and/or polyps using endometrial ablation, which burns

the lining of the uterus. I have performed hysterectomies to treat abnormal uterine bleeding caused by fibroids. I have also removed polyps using graspers, D&C, and electrical resection.

19. S&N's morcellator system was introduced commercially over five years ago (to the best of my recollection). The system was not readily adopted. The S&N morcellator does not cut fibroid tissue at a high enough rate of speed to justify using it over electrical loop resection. Also, the S&N morcellator does not adequately cut a large enough variety of fibroids. Some fibroids are too tough for the S&N morcellator to cut and the blade bounces off or chews these fibroids instead of cutting them. Because of these shortcomings, I and other doctors in my field declined to switch from electrical resection to morcellation when S&N's morcellator was launched. Thus, in my opinion, if Interlace's product had never been on the market, most of the doctors who have used or now use Interlace's product would, like me, have continued to use electrical resection and would not have used S&N's morcellator product.

20. It is important that a fibroid removal device like a morcellator be able to remove the largest variety of fibroids because the toughness of a fibroid is generally unknowable until the doctor actually begins to remove tissue. The limitations of the S&N morcellator to remove harder fibroids would thus not become apparent until the middle of a procedure. If the tissue was of the type that the S&N product could not adequately cut, then I would have to change to electrical resection mid-procedure. This is inefficient and poses unnecessary risks to the patient, due at least in part to increased procedure time.

21. The Interlace morcellator, by contrast, is capable of adequately cutting a much larger variety of tissue than the S&N morcellator. Because of this, the risk of having to switch from morcellation to electrical resection during a procedure is significantly reduced, to the point where the Interlace morcellator is, in my view, the superior method for fibroid removal, even to

electrical resection. Interalce's morcellator has the potential to be the new gold standard for removal of intrauterine fibroids.

22. Morcellation is generally a safer procedure than electrical resection. One reason for this is that morcellators pose less of a risk of perforation or collateral damage to the uterine wall because the morcellator blade is contained within the outer tube. Both S&N's and Interlace's products provide this benefit. Both also provide the benefit that they are not using electrical energy, which poses some risk of burning the patient. Interlace's product, however, by being faster than S&N's product, provides the additional benefit that it takes substantially less time than electrical resection to remove a fibroid. Because of this, the time in which the patient's uterus is distended is generally greatly reduced, which in turn reduces the risk of intravasation caused by the uptake of fluid into the patient's body during dilation of the uterus.

23. It is my opinion that patient care would be significantly compromised if Interlace's morcellator were not available. S&N's morcellator is not an adequate substitute for Interlace's morcellator because of its slow rate of cutting and inability to adequately cut a sufficient variety of fibroids.

24. Another benefit of Interlace's morcellator product is that it can be used with any of the many commercially-available fluid management systems, while S&N's morcellator can only be used with S&N's fluid management system. Indeed, Interlace's morcellator can be used with S&N's fluid management system, which is the setup utilized in my facility. Interlace's flexibility in this regard means greater flexibility for doctors in managing fluid during a morcellation procedure, which in turn allows doctors to minimize risk and maximize efficacy and efficiency of the procedure. In addition, the flexibility of the Interlace product in terms of fluid management systems is another benefit of the Interlace product over the S&N product. If

an operating room has a fluid management system already, they could use the Interlace morcellator with the fluid management system they already have. If they wanted to use the S&N morcellator, however, they would have to buy the S&N fluid management system in addition to the fluid management system they already have.

I declare under penalty of perjury under the Laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Dr. Henry A. Dominicis

Executed this 14th day of November, 2011.

-7-

# APPENDIX A



WOMANCARE

# **CURRICULUM VITAE**

| | |
|---|---|
| Name: | Henry A. Dominicis, M.D. |
| Primary Office: | 1051 West Rand Road<br>Arlington Heights, IL 60004<br>(847) 221-4900 |
| Second Office: | 455 South Roselle Road<br>Schaumburg, IL 60193<br>(847) 221-4300 |
| Work History: | 1991 to Present |

Educational Background:

| | | |
|---|---|---|
| (College) | St. John's University<br>Collegeville, MN | 1979-1983 |
| (Medical School) | University of Illinois<br>Chicago, IL | 1983-1987 |
| (Intern) | Lutheran General Hospital | 1987-1988 |
| (Residency) | Lutheran General Hospital<br>Park Ridge, IL | 1988-1991 |

Hospital Appointments:

Lutheran General Hospital – Park Ridge, IL –
Attending Physician                                               1991-2006

Northwest Community Hospital –
Arlington Heights, IL                                              1996 to Present

Northwest Community Hospital –
Arlington Heights, IL
Chairman – Department of
Obstetrics and Gynecology                                   2006 to 2010

Work Background: High Risk Pregnancy, Laparoscopic Surgery, including Advanced Gyne Surgery, Laser Surgery, Gynecology and Obstetrics and Ultrasound and Genetic Amniocentesis

Board Status: Board Certified – November of 1995 to Present
American Board of Obstetricians and Gynecologists

_____                    _____
**Henry A. Dominicis, M.D.**                                               **Date**

*HAD: January of 2011*