UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

--o0o--

SMITH & NEPHEW, INC.,

      Plaintiff,

   vs.                             No. 11-CV-12064-RWZ

HOLOGIC, INC.,

      Defendant.

_____/

VIDEOTAPED DEPOSITION OF

ANDREW BRILL, M.D.

_____

May 4, 2012

REPORTED BY:  WENDY E. ARLEN, CSR #4355, CRR, RMR

Page 174

1  question.
2       THE WITNESS: I mean, I feel the analogy is
3  bit silly. I'm not sure where we're going here.
4  It's sort of like watching a bubble kind of float
5  around the top of a bathtub and see it go down the
6  drain, you know, and ask whether it went directly
7  down the drain or it circled around the tub a few
8  times before it went down the drain. That's sort of
9  what you're asking me.
10 Q.    MR. SHAH: I understand the difficulty with
11 the question. So let me try to phrase it again and
12 hopefully we can get to a good understanding of what
13 I'm trying to get at.
14      Using the MyoSure system -- and I'm going to
15 say this might be a silly question. I'm just going
16 to ask you to answer it the best you can.
17      Fluid is introduced through the endoscope
18 into the uterus and then fluid and tissue are
19 aspirated through the MyoSure cutter, correct?
20 A.    Correct.
21 Q.    It's not the case that fluid is introduced
22 through the endoscope and then immediately removed
23 through the cutter without ever having passed into
24 the uterus; is that correct?
25      MS. FLORES: Object to the form of the

Page 175

1  question.
2       THE WITNESS: Okay. So you're saying fluid
3  gets in the uterus and it gets aspirated and removed
4  through the outflow channel along with tissue.
5  Q.    Mr. SHAH: Correct.
6  A.    With which device?
7  Q.    So with the MyoSure device. Any fluid that
8  is introduced through the endoscope first enters the
9  uterus before it is aspirated through the cutter; is
10 that correct?
11      MS. FLORES: Object to the form of the
12 question.
13      THE WITNESS: Yes.
14 Q.    MR. SHAH: Okay. Back to column 5. Looking
15 at Claim 1, and do you see where it says:
16 "...inserting a distal region of an endoscope into
17 said uterus..."
18 A.    Where is that? Oh, at 15?
19 Q.    A little bit lower. So right starting at
20 column 20 is the preamble to the claim at line 20,
21 not column 20. Column 5, line 20. And it says: "A
22 method for removal..." Then it says: "...inserting
23 a distal region of endoscope into said uterus."
24      What is your understanding of the distal
25 region of an endoscope?

Page 176

1  A.    It's the opposite of the proximal.
2  Q.    So using this yellow highlighter on Figure 2,
3  can you generally just show me where -- what you
4  understand the distal region to be?
5       (Witness complies.)
6  Q.    And just so we understand, the -- what you've
7  marked as D and circled is the distal region?
8  A.    Uh-huh.
9  Q.    And if you could actually just sort of
10 connect that circle to the actual drawing either with
11 an arrow or a highlight or something of that sort,
12 that will be great.
13      (Witness complies.)
14 Q.    Okay. Thank you. So just looking at the
15 portion that you drew and indicated, I just want to
16 understand, make sure we're on the same page and
17 there is no misunderstanding here.
18      The distal region is just this portion here
19 that you've indicated with the yellow line, or is it
20 a -- is there more of the endoscope that could be
21 part of the distal region?
22 A.    It's a relative term.
23 Q.    Okay. And so understanding that, would
24 you -- do you have a sense for where the distal
25 region would be indicated?

Page 177

1       MS. FLORES: Object to the form of the
2  question.
3       MR. SHAH: Let me strike the question. I'll
4  rephrase that.
5  Q.    So I understand that it's a relative term,
6  meaning that it -- is it fair to say the distal
7  region ends at the line that you drew in yellow?
8  A.    Yes.
9  Q.    Yes.
10 A.    That's the distal end.
11 Q.    End. Okay. And the distal region would be
12 somewhere along the part that is highlighted in green
13 towards the yellow line that you indicated.
14      MS. FLORES: Object to the form of the
15 question.
16 Q.    MR. SHAH: But you can't say a start or an
17 end point.
18 A.    Well, if you want to be a purist, you do a
19 halfway line, and anything forward would be distal
20 and aft would be proximal.
21 Q.    Fair enough. So continuing in column 5, I'm
22 going to bring you down to line -- we'll go back to
23 line 22.
24      "...inserting a distal region of an
25      endoscope into said uterus, the endoscope

Page 194

1  and 58, it refers to the rigid housing having a
2  length which is sufficient to reach all tissue parts,
3  a length of at least 30 centimeters.
4       There was -- sorry.  I know we had just gone
5  over it.  I can't find it right now in the patent,
6  but I know it's on the record.
7  Q.    MR. SHAH:  Just to recap --
8  A.    No, let me finish.  I think part of it, too,
9  is just thinking about the functionality and the way
10 other telescopes are designed, and in the context of
11 how all other hysteroscopes are designed and how
12 these instruments are referred to and their
13 components, it's totally consistent with the fact
14 that the elongated member goes from the distal end of
15 the scope all the way to either the light source
16 and/or the fluid input begins in the telescope.  The
17 fact there is an apparent discrepancy, you know, in
18 the way the patent is written is, you know, a problem
19 that the authors have obviously.
20 Q.    That's fair.  Moving to paragraph 63 of your
21 report where you discuss the doctrine of equivalence
22 and you say:
23       "For the purposes of claim analysis, I
24       understand that the doctrine of equivalence
25       requires that the MyoSure hysteroscope must

Page 195

1       perform substantially the same function in
2       substantially the same way to achieve
3       substantially the same result as the claimed
4       endoscope."
5       So when you were determining whether the
6  MyoSure hysteroscope performs substantially the same
7  function substantially the same way and achieves
8  substantially the same result, what did you compare?
9       MS. FLORES:  Objection to the form of the
10 question.
11      THE WITNESS:  Well, there are multiple --
12 multiple levels of comparison.  One is just the way
13 it produces its effect, which it does by obviously
14 fluid being instilled, fluid being aspirated, a
15 certain mechanism to remove tissue from the uterus
16 and also to aspirate tissue from the uterus all with
17 the use of an offset, to a degree, telescope, which
18 is precisely the way the TRUCLEAR system works.
19 That's one area.  They're basically the same device
20 except for a few details.
21      And when it comes to clinically, for myself
22 and others who I work with, it functions exactly like
23 the TRUCLEAR system does clinically.  So both in
24 design and function and also clinically, they're
25 essentially the same device.

Page 196

1  Q.    So I think you answered this, but just
2  correct me if I got it wrong.  You compared the
3  MyoSure with TRUCLEAR and you looked to see whether
4  MyoSure performs substantially the same function as
5  TRUCLEAR and you looked to see whether MyoSure
6  performed in substantially the same way as TRUCLEAR
7  and then you looked to see if the MyoSure achieved
8  substantially the same result as TRUCLEAR; is that
9  correct?
10 A.    That's correct.
11      MS. FLORES:  I'll object to the form of that
12 question.
13 Q.    MR. SHAH:  When you -- okay.  So if I could
14 turn you to page 10, paragraph 70.  Sorry.  Page 11,
15 paragraph 70.  So we were talking here about element
16 1(d) which says, "the first channel having a" -- and
17 I'm reading just above paragraph 70.  Starting again:
18 Speaking of element 1(d), it says:
19      "the first channel having a light guide
20      permanently affixed therein and being sealed
21      from the second channel to prevent fluid from
22      the valve from entering the uterus through
23      the first channel; followed by..."
24      And then in paragraph 70 you say:
25      "From personal experience using the

Page 197

1       MyoSure System to perform the MyoSure
2       Procedure, inspection of the MyoSure System,
3       and review of instructional and marketing
4       materials, I can confirm that the MyoSure
5       Hysteroscope has a sealed optics channel...
6       that has a permanently affixed lens at the
7       distal end of endoscope and an eyepiece at
8       the proximal end of the endoscope."
9       So my question is what did you do to confirm
10 that the MyoSure hysteroscope had a sealed optics
11 channel?
12      MS. FLORES:  Object to the form of the
13 question.
14      THE WITNESS:  It's corroborated with the
15 citation that's written in section 70.
16 Q.    MR. SHAH:  So you didn't attempt to take the
17 MyoSure hysteroscope apart.
18 A.    No.
19 Q.    And so I am clear your understanding of
20 whether the optics channel has -- is sealed and
21 whether it has a permanently affixed lens is based on
22 your review of the instructional and marketing
23 materials?
24      MS. FLORES:  Object to the form.  Sorry.
25      MR. SHAH:  And --

Page 218

1  the tip and comes back again.  It doesn't necessarily
2  have to come out to extend.
3  Q.    Okay.  And that's a good distinction.
4  Reading this patent, how would you know which one of
5  those methods is indicated, whether it's supposed to
6  mean coming through or passing -- let me make sure I
7  use the same words that you did.  Hang on one second.
8       So reading the patent, how do you know
9  whether the patent refers to linear extension or
10 lateral extension, whether the cutting element
11 literally passes the hole towards the tip and comes
12 back again or whether it goes through the hole?
13      MS. FLORES:  Object to the form of the
14 question.
15      THE WITNESS:  I think you have to look at the
16 device to figure it out.
17 Q.    MR. SHAH:  Okay.  So you wouldn't be able to
18 figure it out just from the patent.
19      MS. FLORES:  Object to the form of the
20 question.
21      THE WITNESS:  That's correct.
22 Q.    MR. SHAH:  I'm going to take you back to your
23 expert report and I can take you to page 10 in
24 paragraph 63.  You state that:
25      "For the purposes of claim analysis, I

Page 219

1       understand that the doctrine of equivalence
2       requires that the MyoSure hysteroscope must
3       perform substantially the same function in
4       substantially the same way to achieve
5       substantially the same result as the claimed
6       endoscope."
7       Do you see that?
8  A.   Yes.
9  Q.   Then in paragraph 64, you state that:
10      "Regarding 'function,' it is my opinion
11      that as one of ordinary skill the MyoSure
12      Hysteroscope performs the same function as
13      the endoscope in the claimed method."
14      What is the function that you are comparing
15 when you formed the opinion expressed in paragraph
16 64?
17 A.   Well, it gives an example.
18 Q.   Okay.  And so that example if we read it is:
19      "For example, the MyoSure Hysteroscope
20      defines the first and second channels,
21      delivers fluid through a valve into the
22      uterus through the second channel to distend
23      the uterus, provides permanently affixed
24      light guide in the first channel and receives
25      the MyoSure TRD through a port in the second

Page 220

1       channel such that the MyoSure TRD extends
2       beyond the distal end of the MyoSure
3       hysteroscope."
4       So that is the function that you are
5  analyzing in determining whether MyoSure has the same
6  function as what is claimed in the '359 patent.
7  A.   Well, I think --
8       MS. FLORES:  Object to the form of the
9  question.
10      THE WITNESS:  It says for example.  So I
11 probably could make -- could sit down and compare
12 with more details as well just as far as how it feels
13 in the hand, how the optics work, how it works in the
14 uterus, how it performs a procedure, how you adjust
15 the view, et cetera.  So there are many nuances that
16 are very similar between the devices as well.
17 Q.   MR. SHAH:  So your analysis with regard to
18 whether they perform the same function is based on
19 the overall function of MyoSure and TRUCLEAR.
20      MS. FLORES:  Object to the form of the
21 question.
22      THE WITNESS:  It's both in regards to the
23 patent and also in regards to how they're globally
24 used.
25 Q.   MR. SHAH:  So when you say it's in regards to

Page 221

1  the patent, what do you -- what do you mean by that?
2  I mean, what are you comparing with the MyoSure with
3  regard to the patent?
4       MS. FLORES:  Object to the form of the
5  question.
6       THE WITNESS:  Well, these various elements
7  are described in the patent as far as the first and
8  second channels, how the fluid is delivered into the
9  uterus and through which channel, the light in the
10 first channel and how the -- the element extends into
11 the uterus.  I mean, that's all in the patent.
12 Q.   MR. SHAH:  Okay.  And so you looked at the
13 sum total of what's here and made an assessment that
14 MyoSure is -- performs the same function as what's
15 described here.
16 A.   Yes.
17      MS. FLORES:  Objection to the form of the
18 question.
19 Q.   MR. SHAH:  And to get a clean record on that,
20 I'm going to ask the same question again just
21 slightly differently.
22      And so when you determined that MyoSure
23 performs the same function as the patent, you looked
24 at the sum total of what's here in paragraph 64 and
25 made an assessment that MyoSure performs the same

ANDREW BRILL, M.D. - 5/4/2012

Page 222

1 function.
2  MS. FLORES: Object to the form of the
3 question.
4  THE WITNESS: So this is part of my analysis.
5 Q.  MR. SHAH: Okay. So moving to --
6  I believe you testified that your analysis
7 was based both in regards to the patent and also in
8 regards to how the products are globally used. What
9 did you mean by globally used?
10 A.  Meaning that if I were to give you a pen you
11 would use it the same way as you use another pen. So
12 in this case, that's how you hold it, that's how you
13 direct it, that's how you angle it, that's how hard
14 you press on it and whatever else you do with your
15 hand. That says nothing about how the pen functions.
16 They both -- you know, it functions like other pens.
17  So in addition to the structural and
18 conceptual similarities between the devices, if you
19 use them clinically, there is no difference, how they
20 perform, what they perform and what their product is.
21 There is no difference essentially between the two
22 devices. So that's part of that global evaluation.
23 Q.  Okay. So is it -- and by the devices, you
24 mean MyoSure and TRUCLEAR.
25 A.  Correct.

Page 223

1 Q.  And so is it correct that your understanding
2 of the patent, the '359 patent, is based partially on
3 your experience with TRUCLEAR?
4  MS. FLORES: Object to the form of the
5 question.
6  THE WITNESS: It's partially based on
7 experience with both devices.
8 Q.  MR. SHAH: Fair enough. So what I want to
9 understand is that when you did your analysis as to
10 whether MyoSure performs the same function as what is
11 described in the patent, that was based on your
12 understanding of MyoSure and TRUCLEAR; is that
13 correct?
14  MS. FLORES: Object to the form of the
15 question. I think it's been asked and answered.
16  THE WITNESS: Yes.
17 Q.  MR. SHAH: And your understanding of the
18 patent was informed by your understanding of
19 TRUCLEAR.
20  MS. FLORES: Object to the form of the
21 question.
22  THE WITNESS: I'm not sure that I understand
23 the term informed.
24 Q.  MR. SHAH: Your understanding of the patent
25 and what is claimed in the '359 patent is based on

Page 224

1 your experiences using TRUCLEAR; is that correct?
2  MS. FLORES: Object to the form of the
3 question.
4  THE WITNESS: Yes, and also how MyoSure is
5 built and functions.
6 Q.  MR. SHAH: Okay. Turning to paragraph 65
7 where you provide your analysis that MyoSure operates
8 in the same way as the endoscope in the claimed
9 method, is it fair to say that it's -- your basis for
10 this statement is the same as what we discussed with
11 regard to your analysis of function in that -- strike
12 that.
13  What is -- what is your basis for -- strike
14 that.
15  What is the way that you compared when
16 determining that MyoSure -- the MyoSure hysteroscope
17 operates in the same way as the endoscope in the
18 claimed method?
19 A.  The same process I used to answer your last
20 question. Is that sufficient or do you want me to --
21 Q.  That's what I was getting after. And is that
22 true with regard to the result that you analyzed to
23 determine that the MyoSure hysteroscope yields the
24 exact same result as the use of the claimed
25 endoscope?

Page 225

1 A.  Yes.
2 Q.  And is it fair to say that -- strike that.
3  Do you know if the -- strike that.
4  My preamble is I know we covered this a
5 little bit earlier, but I want to make sure I
6 understand. Do you have an understanding as to
7 whether the MyoSure hysteroscope is longer or shorter
8 than the TRUCLEAR hysteroscope?
9 A.  I have not objectively compared them.
10 Q.  So you don't know whether one is longer or
11 shorter than the other.
12 A.  Correct.
13 Q.  And is it also your understanding that -- or
14 your opinion -- strike that.
15  Is it your opinion that the length of the
16 hysteroscope would not affect the result that could
17 be achieved -- strike that.
18  Is it your opinion that the length of the
19 MyoSure hysteroscope as compared to the length of the
20 TRUCLEAR device does not affect the way in which the
21 two devices are used?
22  MS. FLORES: Object to the form of the
23 question.
24  THE WITNESS: Could you read that question?
25 I'm sorry. Because it sounded like you asked length

Page 266

1  to how the device is used and what the outcome is is
2  precisely as proscribed in the patent.
3  **Q. MR. SHAH: If I understand this correctly,**
4  **your opinion is that because -- strike that.**
5  **Your opinion is that because Hologic sales**
6  **representatives teach the MyoSure procedure which you**
7  **understand to infringe the '359 patent and,**
8  **therefore, Hologic sales representatives induce**
9  **infringement of the '359 patent; is that correct?**
10     MS. FLORES: Object to the form of the
11 question.
12     THE WITNESS: In my simplistic way, yes.
13     MR. SHAH: Okay. No further questions.
14     MS. FLORES: I've got none.
15     VIDEOGRAPHER: Very good. Going off the
16 record, the time now is 4:42. This also is the
17 conclusion of tape four.
18          --oOo--
19     (Whereupon, the deposition was adjourned at
20 4:42 p.m.)
21          --oOo--
22
23
24
25

Page 267

1
2     I declare under penalty of perjury that
3  the foregoing is true and correct. Subscribed at
4  _____, California, this ____ day of
5  _____, 2012.
6
7
8          _____
9              Signature of Witness
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 268

1          CERTIFICATE OF REPORTER
2     I, WENDY E. ARLEN, a Certified Shorthand
3  Reporter, hereby certify that the witness in the
4  foregoing deposition was by me duly sworn to tell the
5  truth, the whole truth and nothing but the truth in the
6  within-entitled cause;
7     That said deposition was taken down in shorthand
8  by me, a disinterested person, at the time and place
9  therein stated, and that the testimony of the said
10 witness was thereafter reduced to typewriting, by
11 computer, under my direction and supervision.
12    That before completion of the deposition, review
13 of the transcript [ ] was [ ] was not requested. If
14 requested, any changes made by the deponent (and
15 provided to the reporter) during the period allowed are
16 appended hereto.
17    I further certify that I am not of counsel or
18 attorney for either or any of the parties to the said
19 deposition nor in any way interested in the event of
20 this cause and that I am not related to any of the
21 parties thereto.
22          DATED:_____, 2012
23
24          _____
25          WENDY E. ARLEN CSR, No. 4355